RECORD NO. 13-1316

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

For The District of Columbia Circuit

## ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,

*Petitioner*,

v.

## MICHAEL P. HUERTA; FEDERAL AVIATION ADMINISTRATION,

*Respondents*.

ON APPEAL FROM THE FEDERAL AVIATION ADMINISTRATION

––––––––––––

## PAGE PROOF BRIEF OF PETITIONER

––––––––––––

Michael J. Pangia
Amanda C. Dure
PANGIA LAW GROUP
1717 N Street, NW
Washington, DC 20036
(202) 955-6450

*Counsel for Petitioner*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

The following information is provided pursuant to the Court's order of

December 30, 2013 and D.C. Circuit Rule 28(a)(1).

A.    Parties

Petitioner

Association of Flight Attendants—CWA,  AFL-CIO

Respondents

Michael P. Huerta

Federal Aviation Administration

Counsel for Petitioner is aware of no intervenors or amici in this case.

B.    Rulings

The ruling under review is the Federal Aviation Administration National

Policy Notice N8900.240, published October 31, 2013, filed by Petitioner as the

"Underlying Decision."

C.    Related Cases

Counsel for Petitioner is aware of no related cases currently pending in any

other court.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ...................................................iv

GLOSSARY..........................................................................vi

JURISDICTIONAL STATEMENT .........................................1

STATEMENT OF ISSUES ....................................................1

STATUTES AND REGULATIONS........................................2

STATEMENT OF THE CASE................................................2

SUMMARY OF THE ARGUMENT .....................................5

STANDING ..........................................................................6

ARGUMENT ........................................................................7

    I.    N8900.240 substantially alters and amends existing carry-on baggage regulation without having provided an opportunity for notice and comment................................................................7

        A.    Standard of Review...............................................7

        B.    If the FAA wishes to exempt portable electronic devices from carry-on baggage regulation, they must promulgate rules pursuant to the APA, and not a national policy change ..................................................................8

    II.    The FAA failed to demonstrate a rational connection between the changes set forth in N8900.240 and the evidence presented to effectuate such change ................................................12

    A.    Standard of Review ..................................................................12

    B.    The FAA ignored evidence from its own scientists when
          it formulated a national policy change ......................................13

CONCLUSION .....................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Mining Congress v. MSHA*,
  995 F.2d 1106 (D.C. Cir. 1993)...................................................................7

*Appalachian Power Co. v. E.P.A.*,
  208 F.3d 1015 (D.C. Cir. 2000).............................................................7, 9

*FCC v. Fox Television Stations*, *Inc.*,
  556 U.S. 502 (2009)...........................................................................12, 13

*Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*,
  429 F.3d 1130 (D.C. Cir. 2005)..................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)......................................................................................12

*Paralyzed Veterans v. D.C. Arena, L.P.*,
  117 F.3d 579 (D.C. Cir. 1997)....................................................................7

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002)....................................................................6

## CONSTITUTIONAL PROVISION

U.S. CONST., art. III. .......................................................................................6

## STATUTES

5 U.S.C. § 501(c)(5).........................................................................................6

5 U.S.C. § 553 ...........................................................................................1, 5, 7

*5 U.S.C. § 706...........................................................................................1, 7

*Chief Authorities are Designated by an Asterisk.*

5 U.S.C. § 706(2)(A) ........................................................................1, 12

5 U.S.C. § 706(2)(D) ........................................................................1, 7

49 U.S.C. § 46110 ...............................................................................1

49 U.S.C. § 46110(a) ...........................................................................1

**RULE**

Fed. R. App. P. 15 ...............................................................................1

**REGULATIONS**

14 C.F.R. § 121 ...................................................................................2

14 C.F.R. § 121.589 .................................... 1, 2, 3, 4, 5, 8, 9, 10, 11, 14

14 C.F.R. § 121.589(c)(1) .....................................................................8

**OTHER AUTHORITIES**

Amendment 121-194, Carry-On Baggage Program, 52 FR 21472,
June 5, 1987 ........................................................................................8

Federal Aviation Administration Information for Operations InFO
13010SUP, FAA Aid to Operators for the Expanded Use of Passengers
PEDs, February 24, 2014 ....................................................................11

Federal Aviation Administration Information for Operations InFO 09018,
November 12, 2009 ...............................................................................8

Notice of Policy and Request for Comments for Passenger Use of Portable
Electronic Devices (PEDs) on Board Aircraft,
FAA-2012-0752-002 .............................................................................2

PED Stowage Policy Assessment and Considerations ...........................13

Report on Portable Electronic Devices Aviation Rulemaking Committee
PED Stowage Policy Assessment and Considerations .............................3

# **GLOSSARY**

| | |
|---|---|
| AFA | Petitioner Association of Flight Attendants—CWA, AFL-CIO |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 553, 706 |
| CAMI | Office of Aerospace Medicine, Civil Aerospace Medical Institute |
| FAA | Respondent Federal Aviation Administration |
| JA | Joint Appendix (deferred) |
| PED ARC Stowage | Report from the Portable Electronic Devices (PED) |
| Aviation Rulemaking Report | Committee to the Federal Aviation Administration, September 25, 2013 |

## JURISDICTIONAL STATEMENT

The Association of Flight Attendants petitions for review Respondent Federal Aviation Administration's (FAA) attempt to alter the carry-on baggage regulations through National Policy Notice N8900.240 ("N8900.240"), JA ___. N8900.240 was issued on October 31, 2013 and fundamentally altered the longstanding regulation pertaining to the stowage of items in the cabin during takeoff and landing. On December 30, 2013, the AFA filed a Petition for Review pursuant to the Federal Rule of Appellate Procedure Rule 15 and the Administrative Procedure Act 5 U.S.C. § 706. Jurisdiction is proper in this Court under 49 U.S.C. § 46110, which provides for judicial review of orders issued by the Secretary of Transportation or the Administrator of the FAA. This petition is timely because it was filed within 60 days of the issuance of the Rule, as prescribed by 49 U.S.C. § 46110(a).

## STATEMENT OF ISSUES

Did the Federal Aviation Administration violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 706(2)(D) by altering 14 C.F.R. § 121.589 ("carry-on baggage regulation") under the pretense of a policy change without the appropriate notice-and-comment as required by the APA?

Did the Federal Aviation Administration violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) by promulgating a rule, N8900.240

1

that is arbitrary and not in accordance with existing law, 14 C.F.R. § 121.589

("carry-on baggage regulation")?

## STATUTES AND REGULATIONS

Copies of the pertinent statutes and regulations are set forth in the

Addendum.

## STATEMENT OF THE CASE

In 1987 14 C.F.R. § 121, concerning Federal Aviation Regulations, was

amended to require air carriers to develop and use approved carry-on baggage

programs and to verify that each article of baggage was properly stowed prior to

taxiing in an effort to promote safety in a cabin. *See* Amendment 121-194 (52 FR

214472, June 5, 1987), JA ___; *see also* 14 C.F.R. § 121.589 ("carry-on baggage

regulation"), JA___.  Since its inception, the carry-on baggage regulation applied

to *all* items brought onto an aircraft by passengers, including lunches, duty free

items, books, and upon their advent, portable electronic devices such as cell

phones, iPads, and laptops.  On August 28, 2012, the FAA issued a Notice of

Policy and Request for Comments for Passenger Use of Portable Electronic

Devices (PEDs) on Board Aircraft, FAA-2012-0752-002, soliciting comments on

when, if at any time, passenger use of PEDs could be allowed during any phase of

flight on the aircraft. *See* FAA-2012-0752-002, JA___.  The purpose of the request

for comments was to solicit feedback on whether the possible expansion of PEDs

2

on all phases of flight on the aircraft could occur "while maintaining the highest levels of safety to passengers and aircraft." *Id.* at 1, JA ___. Comments were submitted between August 27, 2012 and December 12, 2012. On March 5, 2013, the FAA issued an Aviation Rulemaking Committee Manual, and renewed the Committee Charter on August 28, 2013.

On September 25, 2013, the FAA issued a Report on Portable Electronic Devices Aviation Rulemaking Committee PED Stowage Policy Assessment and Considerations ("PED ARC Stowage Report"), JA___. In its assessment, the FAA referenced 14 C.F.R. § 121.589, among other statutes, as affected by the projected expansion of the usage of PEDs. *See id.*, JA ___. The PED ARC Stowage Report noted several safety concerns regarding the expanded use of PEDs, including whether a PED could adversely restrict egress in an emergency evacuation, even if stowed in a seat pocket, and also addressed the high probability of possible impact injury risks from typical PEDs that could occur during takeoff or landing. *See id.*, JA ____. Without providing any clear guideline or response to these concerns, on October 31, 2013, Notice N8900.240, Expanded Use of Passenger Portable Electronic Devices was issued by the FAA, allowing the use of PEDs during takeoff and landing, thus effectively amending 14 C.F.R. § 121.589. *See* National Policy Notice N8900.240, Federal Aviation Administration, October 31, 2013, JA___. Under existing carry-on baggage regulation, even meals carried on by

3

passengers were considered to be carry-on baggage necessitating stowage "in accordance with the regulations pertaining to carry-on baggage." *See* FAA Volume 3, Chapter 33, 8900.1.CHG O, September 13, 2007, JA___. By promulgating N8900.240, the FAA attempted to change 14 C.F.R. § 121.589 without going through the required rulemaking process. Carry-on baggage regulation was fundamentally altered by N8900.240, in relevant portion, stating:

> PED Securing and Stowage. An operator may need to revise its approved carry-on baggage program to allow expanded use of passenger PEDs. Appendix G of the PED ARC Report provides considerations for an operator when establishing policy and guidance for securing and stowing PEDs. Allowing expanded use of passenger PEDs into the takeoff and landing phases of flight may change the flight attendant's (F/A) responsibilities from confronting and reporting passenger noncompliance to informing passengers of the content of PED policy. F/As should inform passengers regarding the safest way to secure and stow all items. An expanded operator's program should address the following general concerns (as required):

- Large PED, such as full-size laptops, must be safely stowed so as not to present a hazard in the event of severe turbulence, crash forces, or emergency egress.

4

- PED policy should define "small PEDs" and describe how these items may safely remain powered on, as long as they are secure (not loose) during takeoff and landing. For example, the passenger may have a small PED secured in-hand, in a belt or arm holster or in a pant pocket.

- PED cords or accessories must not impede emergency egress. FAA N8900.240, JA ___.

On December 30, 2013, the AFA filed the Petition for Review in this Court.

## SUMMARY OF THE ARGUMENT

On October 31, 2013, the FAA issued N8900.240, which expanded the use of PEDs during all phases of flight on an aircraft. In doing so, the FAA impermissibly and substantially altered and effectively amended 14 C.F.R. § 121.589, the regulation that pertains to carry-on baggage on an aircraft. Section 706 of the APA allows a reviewing court to set aside agency action, findings, and conclusions found to be "not in accordance with law" or "without observance of procedure as required by law." Because N8900.240 is arbitrary, capricious, and in violation of an existing, valid regulation, and the regulatory change was issued without the appropriate notice and comment requirement of § 553 of the APA, N8900.240 must be set aside as to the offending provisions regarding stowage of PEDs during takeoff and landing on a flight.

## STANDING

A trade association has Article III "representational standing to bring suit on behalf of its members if (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*, 429 F.3d 1130, 1134-35 (D.C. Cir. 2005); *see also Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002). Petitioner AFA is a 501(c)(5) union nonprofit corporation and professional trade association that represents the interests of flight attendants including concerns regarding workplace conditions and safety. N8900.240, issued by the FAA, is not in accordance with the longstanding regulation governing carry-on baggage that directly affects the safety of all flight attendants that are members to the AFA. Members of the AFA have and continue to be in danger of physical injury as a result of the change in longstanding regulation. Because the FAA's new rule has directly and adversely affected the safety of the members of AFA, a ruling by this Court in AFA's favor would redress those injuries.

Moreover, the AFA has Article III standing because its members are subject to, and therefore are aggrieved by the rulemaking action that is the subject of this Petition. *See* U.S. Const., art. III. Members of the AFA have been deprived of

their right of an appropriate notice and comment proscribed by APA because of the

FAA's unilateral rulemaking in National Policy Notice N8900. 240.

## **ARGUMENT**

**I.     N8900.240 substantially alters and amends existing carry-on baggage regulation without having provided an opportunity for notice and comment.**

### **A.     Standard of Review**

Judicial review of rules issued by the FAA are subject to the APA, 5 U.S.C.

§ 706.  *See* 5 U.S.C. § 706, JA___.  Under APA § 706(2)(D), a reviewing court

may also set aside agency action if the action is "without observance of procedure

required by law."  *Id.*, JA___.  The APA requires that a rulemaking committee

make available for public comment an analysis of the impact of a proposed rule

prior to enacting the rule.  5 U.S.C. § 553, JA___.  *See Paralyzed Veterans v. D.C.

Arena*, *L.P.*, 117 F.3d 579, 588 (D.C. Cir. 1997); *American Mining Congress v.

MSHA*, 995 F.2d 1106, 1109-10 (D.C. Cir. 1993). An agency cannot escape the

notice and comment requirements of the APA by "labeling a major substantive

legal addition to a rule a mere interpretation." *See Appalachian Power Co.*, *et al.*,

*v. EPA*, 208 F.3d 1014, 1024 (D.C. Cir. 2000). Rather, a court must look to

"whether the interpretation itself carries the force and effect of law, …or rather

whether it spells out a duty fairly encompassed within the regulation that the

interpretation purports to construe."  *Id.*

**B.    If the FAA wishes to exempt portable electronic devices from carry-on baggage regulation, they must promulgate rules pursuant to the APA, and not a national policy change.**

14 C.F.R. § 121.589 regulates the stowage of all carry-on baggage on a commercial flight including Portable Electronic Devices. Section 121.589 expressly prohibits an air carrier from taking off or landing unless each article of baggage is stowed "in a suitable closet or baggage or cargo stowage compartment placard for its maximum weight and providing proper restraint for all baggage or cargo stowed within, and in a manner that does not hinder the possible use of any emergency equipment."  14 C.F.R. § 121.589(c)(1), JA___.  The intent of carry-on baggage regulation is steeped in concern for safety. Section 121.589 was enacted to "prevent carry-on items from slowing an emergency evacuation and to prevent injury to passengers by ensuring items are properly restrained."  Federal Aviation Administration Information for Operations InFO 09018, November 12, 2009, JA___.  The primary benefit of the regulation would be the "prevention of fatalities and injuries resulting from improperly stowed items obstructing rapid passenger egress in otherwise survivable impacts and from improperly stowed items dislodging and striking passengers and crew when abrupt aircraft deceleration or attitudinal changes occur."  *See* Amendment 121-194, Carry-On Baggage Program, 52 FR 21472, June 5, 1987 at P-582, JA___.

8

N8900.240 has effectively dismantled 14 C.F.R. § 121.589, a regulation that is still in effect and good law. The FAA's new rule allows for the continual violation of 14 C.F.R. § 121.589 because it permits PEDs to not be properly stowed upon takeoff and landing.  Moreover, N8900.240 provides no guidance as to which PEDs must be stowed, either by weight or size, and no guidance as to where such PEDs may be placed. The rule simply suggests that "smaller" items be held, while "larger" items be stowed in an unspecified location.  In short, the FAA issued a rule in policy's clothing.  Moreover, they did so without formally publishing a proposed change in the regulation and without affording Petitioner the opportunity for an appropriate notice and comment.[1]

---

[1] The FAA followed a familiar phenomenon in which "Congress passes a broadly worded statute.  The agency follows with regulations containing broad language, open-ended phrases, ambiguous standards, and the like.  Then as years pass, the agency issues circulars or guidance or memoranda, explaining, interpreting, defining, and often expanding the commands in the regulations.  One guidance document may yield another and then another and so on.  Several words in a regulation may spawn hundreds of pages of text as the agency offers more and more detail regarding what its regulations demand of regulated entities.  Law is made, without notice and comment, without public participation, and without publication in the Federal Register or the Code of Federal Regulations.  With the advent of the Internet, the agency does not need these official publications to ensure widespread circulation; it can inform those affected simply by posting its new guidance or memoranda or policy statement on its web site.  An agency operating in this way gains a large advantage.  'It can issue or amend its real rules, i.e., its interpretative rules and policy statements, quickly and inexpensively without following any statutorily prescribed procedures.'"  *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1020 (D.C. Cir. 2000).

The possible solutions to stowage concerns presented by the FAA also violate 14 C.F.R. § 121.589.  While the PED ARC Stowage Report suggested that smaller PEDs be placed in the seat back pocket, the FAA has noted that "the only items allowed in seat pockets should be magazines and passenger information cards."  FAA Order 8900.1, Volume 3, Chapter 33, Section 6, Operations, Cabin Safety [http://fsims.faa.gov], JA___.  Seat back pockets are not listed as an approved stowage location for carry-on baggage and are designed to hold only three pounds of weight.  *Id.*, JA___.  While it may be safe to place items in the seat back pocket after take-off  and landing without exceeding the weight limitation, it must be done after take-off and before landing because the requirements of the carry-on baggage regulation are applicable to take-off and landing. The regulation does not prohibit a "passenger from taking out small personal items from an approved stowage location and placing them in a seat pocket *after takeoff and stowing them in approved locations prior to landing.*".  Federal Aviation Administration Information for Operations InFO 09018, November 12, 2009 (emphasis added), JA____.  N8900.240, however, conflicts with such written direction and precedent that the FAA had previously provided with regard to carry-on baggage regulation.

Allowing a passenger to hold a PED additionally creates a safety risk that 14 C.F.R. § 121.589 had always expressly intended to prevent.  Even as late as

September 18, 2013, the FAA, through its Office of Aerospace Medicine, Civil

Aerospace Medical Institute (CAMI), noted that "items of mass can become

projectiles in the event of a sudden deceleration as could be experienced during a

maximum performance landing, rejected takeoff, turbulence, or a severe but

survivable crash landing" and that a passenger could lose control of even a light,

loose unstowed object that he was holding onto during events of turbulence or an

emergency landing. *See* PED Stowage Policy Assessment and Considerations,

Appendix 2 at G-34, JA___.  In fact, the FAA recently acknowledged that holding

small PEDs was not a preferable means to secure such items. *See* Federal Aviation

Administration Information for Operations InFO 13010SUP, FAA Aid to

Operators for the Expanded Use of Passengers PEDs, February 24, 2014 at 14,

JA____.  Because the express purpose of carry-on baggage regulation has always

been safety and the proper stowage of items, especially during takeoff and landing,

allowing passengers free rein to hold their PEDs during critical phases of flight

substantially alters 14 C.F.R. § 121.589.

Finally, the deregulation of carry-on baggage through the free usage of

PEDs during take-off and landing further presents significant concerns related to

the safe evacuation of an airplane in an emergency.  N8900.240 allows passengers

to wear noise canceling headsets during takeoff and landing in conjunction with

PED use.  This results in some passengers completely ignoring flight attendants'

attempts to inform clients of safety instructions and compliance with FAA carry-on baggage regulations, resulting in the potential for unawareness by passengers of basic safety information. As noted by CAMI, "it seems inexplicable to promote PED usage during the very times when passengers might need to engage that safety information the most." *See* PED Stowage Policy Assessment and Considerations, Appendix 2 at G-33, JA___.

## II.   The FAA failed to demonstrate a rational connection between the changes set forth in N8900.240 and the evidence presented to effectuate such change.

### A.   Standard of Review

Under § 706(2)(A), a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" that it finds were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." This standard requires the FAA to examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Moreover, while an agency is free to change its policy, the APA requires that the agency not "simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-515 (2009). Rather, the agency must show that there are good reasons for a new policy

and provide detailed justification when "its new policy rests upon factual findings that contradict those which underlay its prior policy." *Id.* at 515.

### B.    The FAA ignored evidence from its own scientists when it formulated a national policy change.

The FAA has not promulgated a satisfactory safety explanation for expanding the use of PEDs during takeoff and landing with the present data available. The PED ARC Stowage Report issued by the FAA on September 25, 2013 contained a memo from the FAA's Office of Aerospace Medicine, Civil Aerospace Medical Institute, detailing an assessment done by cabin safety research scientists regarding options for expanded usage of PEDs, particularly as to the relationship between PED usage and post-crash emergency evacuation.  *See* PED Stowage Policy Assessment and Considerations, Appendix G at G-31, JA___.  The memo, while recognizing the attraction and allure of allowing use of PEDs during all phases of flight, contained a wealth of information and warnings as to the danger of liberal usage of PEDs on a flight.  The specialized FAA cabin safety research scientists pointed to scientific data and analysis "pertinent to maintaining a 'clean cabin environment'" during critical phases of flight, including that accident data demonstrated that takeoff/initial climb and final approach/landing are critical phases of flight for accidents and fatalities.  *Id.* at G-33, JA___.  Moreover, FAA biodynamics research scientists warned that "hanging onto a small object exposed to the inertial forces that could be imposed during turbulence or an

13

emergency landing is possible" and "the unexpected nature of these events [makes it] more likely that a passenger would lose control of even a light object." *Id.*, JA___. The scientists concluded that a means to control the risk of impacts from loose objects was "to store them during phases of flight where the risk of unexpected deceleration is most likely i.e. takeoff, turbulence, and landing." *Id.*, JA___.

Despite such a detailed study of risks and warnings provided by its own scientists, the FAA chose to unilaterally proceed and allow PEDs on all phases of flight, including takeoff and landing. Not only did such a decision result in fundamentally altering current carry-on baggage regulation, but directly contradicted evidence presented by its own scientists. The FAA failed to address why such safety concerns should be ignored when the precise intent and primary benefit of 14 C.F.R. § 121.589 is cabin safety. Accordingly, the FAA's action should be set aside as to usage of PEDs during takeoff and landing.

## CONCLUSION

The policy regarding expanded use of Portable Electronic Devices during critical phases of flight including takeoff and landing, enacted by the FAA, N8900.240, should be set aside and the FAA, if pursuing a change in regulation, be required to label it as such and follow the notice and comment procedure required by the APA, and further relief as the Court may deem just and proper.

14

Respectfully submitted,

/s/ Michael J. Pangia
Michael J. Pangia
Amanda C. Dure
Pangia Law Group
1717 N Street NW
Washington, DC 20036
P: (202) 955-6450
F: (202) 393-1725
Mike.law@verizon.net
*Attorney for Petitioner*

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,280*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>May 5, 2014    </u>                    <u>/s/ Michael J. Pangia    </u>
                                                                            *Counsel for Petitioner*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 5th day of May, 2014, I caused this Page Proof Brief of Petitioner and Addendum to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jeffrey E. Sandberg
> Mark B. Stern
> U.S. DEPARTMENT OF JUSTICE
>   CIVIL DIVISION, APPELLATE STAFF
> 950 Pennsylvania Avenue, NW, Room 7214
> Washington, DC  20530
> (202) 532) 4453

*Counsel for Respondents*

I further certify that on this 5th day of May, 2014, I caused the required copies of the Page Proof Brief of Petitioner and Addendum to be hand filed with the Clerk of the Court.

/s/ Michael J. Pangia
*Counsel for Petitioner*