**[ORAL ARGUMENT NOT YET SCHEDULED]**

No. 13-1316

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

ASSOCIATION OF FLIGHT ATTENDANTS—CWA, AFL-CIO,

Petitioner,

v.

MICHAEL P. HUERTA, ADMINISTRATOR
OF THE FEDERAL AVIATION ADMINISTRATION,

Respondent.

———————————

ON PETITION FOR REVIEW FROM
THE FEDERAL AVIATION ADMINISTRATION

———————————

**PROOF BRIEF FOR RESPONDENT**

———————————

STUART F. DELERY
  Assistant Attorney General

RONALD C. MACHEN JR.
  United States Attorney

MARK B. STERN
  (202) 514-5089
JEFFREY E. SANDBERG
  (202) 532-4453
  Attorneys, Appellate Staff
  Civil Division, Room 7214
  U.S. Department of Justice
  950 Pennsylvania Avenue, N.W.
  Washington, DC  20530

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.     Parties and Amici.**

The petitioner in this Court is the Association of Flight Attendants–CWA, AFL-CIO.  The respondent in this Court is Michael P. Huerta, Administrator of the Federal Aviation Administration ("FAA").  Counsel is not aware of any other parties, intervenors, or amici who have appeared before this Court.

**B.     Rulings Under Review.**

Petitioner seeks review of FAA Notice N8900.240, entitled "Expanded Use of Passenger Portable Electronic Devices (PED)," a guidance document issued by the FAA to its aviation safety inspectors on October 31, 2013.  The Notice is reproduced in the Joint Appendix at JA __-__ [CIR#38].

**C.     Related Cases.**

Counsel is not aware of any prior or related proceedings within the meaning of D.C. Cir. Rule 28(a)(1)(C).

Respectfully submitted,

 /s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
Counsel for Respondent

# TABLE OF CONTENTS

GLOSSARY ...................................................................................................vi

STATEMENT OF JURISDICTION ..............................................................1

STATEMENT OF THE ISSUES.....................................................................2

PERTINENT STATUTES AND REGULATIONS .......................................2

STATEMENT OF THE CASE........................................................................3

     A. Nature of the Case..............................................................................3

     B. Statutory and Regulatory Background..............................................4

     C. Factual Background ...........................................................................6

SUMMARY OF ARGUMENT......................................................................13

ARGUMENT ................................................................................................14

  I.  BECAUSE IT DOES NOT DETERMINE ANY LEGAL RIGHTS
     OR OBLIGATIONS, THE NOTICE IS NOT REVIEWABLE AND
     A RULEMAKING PROCESS WAS NOT REQUIRED. ................................14

     A. The Notice Does Not Constitute A Final Agency Order Reviewable
       Under 49 U.S.C. § 46110. .................................................................14

     B. The Notice Is Not Subject To APA Notice-and-Comment
       Requirements.....................................................................................18

  II.  THE FAA'S GUIDANCE IS ENTIRELY REASONABLE............................25

CONCLUSION ............................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY AND REGULATORY ADDENDUM

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page**

*Am. Coke & Coal Chems. Inst. v. EPA,*
   452 F.3d 930 (D.C. Cir. 2006) .......................................................................24

*Am. Mining Cong. v. Mine Safety & Health Admin.,*
   995 F.2d 1106 (D.C. Cir. 1993) ........................................................19, 20, 21

*Am. Tort Reform Ass'n v. OSHA,*
   738 F.3d 387 (D.C. Cir. 2013) .......................................................................18

*Appalachian Power Co. v. EPA,*
   208 F.3d 1015 (D.C. Cir. 2003) .....................................................................20

*Bennett v. Spear,*
   520 U.S. 154 (1997) .......................................................................................14

*\*Catawba County v. EPA,*
   571 F.3d 20 (D.C. Cir. 2009) (per curiam).......................................13, 18, 24

*Cement Kiln Recycling Coal. v. EPA,*
   493 F.3d 207 (D.C. Cir. 2007) .......................................................................19

*\*Center for Auto Safety v. Nat'l Hwy. Traffic Safety Admin.,*
   452 F.3d 798 (D.C. Cir. 2006) ...................................................... 16, 17, 19, 20

*\*City of Dania Beach, Fla. v. FAA,*
   485 F.3d 1181 (D.C. Cir. 2007) ........................................................13, 14, 15

*City of Santa Monica v. FAA,*
   631 F.3d 550 (D.C. Cir. 2011) .......................................................................25

*Gen. Elec. Co. v. EPA,*
   290 F.3d 377 (D.C. Cir. 2002) .......................................................................18

---

\* Authorities chiefly relied upon are marked with an asterisk.

*Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*,
     589 F.2d 658 (D.C. Cir. 1978) ...........................................................20

*Helicopter Ass'n Int'l, Inc. v. FAA*,
     722 F.3d 430 (D.C. Cir. 2013) ...........................................................25

*Mortg. Bankers Ass'n v. Harris*,
     720 F.3d 966 (D.C. Cir. 2013), *cert. granted*, 2014 WL 833886
     (U.S. June 16, 2014) (No. 13-1041)...................................................23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
     463 U.S. 29 (1983) ............................................................................25

*Nat'l Ass'n of Home Builders v. Norton*,
     415 F.3d 8 (D.C. Cir. 2005)........................................................ 17, 20

*Natural Res. Def. Council v. EPA*,
     643 F.3d 311 (D.C. Cir. 2011) ...........................................................19

*\*U.S. Telecom Ass'n v. FCC*,
     400 F.3d 29 (D.C. Cir. 2005) .............................................................25

*\*Vill. of Bensenville v. FAA*,
     457 F.3d 52 (D.C. Cir. 2006) ...................................................2, 14, 15

*Wilderness Soc'y v. Norton*,
     434 F.3d 584 (D.C. Cir. 2006) ....................................................17, 20

**Statutes:**

5 U.S.C. § 553(b)-(d) ....................................................................................18

5 U.S.C. § 553(b)(A) .....................................................................................18

5 U.S.C. § 553(d)(2).......................................................................................18

5 U.S.C. § 706.................................................................................................24

49 U.S.C. § 106(f)(3)(A).................................................................................4

49 U.S.C. § 44701(a) .............................................................................4

49 U.S.C. § 44701(a)(5) ........................................................................4

49 U.S.C. § 46110 ...............................................................................14

49 U.S.C. § 46110(a) .................................................1, 2, 13, 14, 18, 25

**Regulations:**

14 C.F.R. § 91.19 ..................................................................................4

14 C.F.R. § 91.21 ..................................................................................4

14 C.F.R. §§ 121.1 *et seq.* ......................................................................4

14 C.F.R. § 121.285(c)-(d) .....................................................................6

14 C.F.R. § 121.306 ..............................................................................4

14 C.F.R. § 121.306(a) ..........................................................................5

14 C.F.R. § 121.306(b)(1)-(4) ................................................................5

14 C.F.R. § 121.306(b)(5) ......................................3, 4, 5, 13, 15, 21

14 C.F.R. § 121.306(c) ................................................3, 4, 5, 13, 15

14 C.F.R. § 121.589 ..................................................12, 13, 23, 26

14 C.F.R. § 121.589(a) ...............................3, 5, 6, 15, 17, 21

14 C.F.R. § 121.589(c) .................................................6, 16, 21, 22

14 C.F.R. § 121.589(c)(2) ......................................................................6

31 Fed. Reg. 15,317 (Dec. 7, 1966) .......................................................4

52 Fed. Reg. 21,472 (June 5, 1987) .......................................................5

64 Fed. Reg. 1076 (Jan. 7, 1999) ..........................................................4

**Other Authorities:**

FAA Advisory Circular No. 91-21.1B, *Use of Portable Electronic Devices Aboard Aircraft* (Aug. 25, 2006) .................................................................. 5, 7, 15

FAA InFO 09018, *Stowage of Items in Seat Pockets* (Nov. 12, 2009) ...................................23

FAA InFO 13010, *Expanding Use of Passenger Portable Electronic Devices (PED)* (Oct. 31, 2013) .......................................... 9, 10, 11, 20, 22, 27, 28

FAA InFO 13010SUP, *FAA Aid to Operators for the Expanded Use of Passenger PEDs* (Oct. 31, 2013) .......................................10, 11, 16, 26, 28

FAA InFO 13010SUP, *FAA Aid to Operators for the Expanded Use of Passenger PEDs* (June 9, 2014) .......................................................10, 23, 28

FAA Notice N8900.240, *Expanded Use of Passenger Portable Electronic Devices (PED)* (Oct. 31, 2013) .......................1, 2, 10, 11, 15-17, 19-21, 27, 28

FAA Order 8900.1, *Flight Standards Information Management System (FSIMS)* (Sept. 13, 2007) ........................................................................6

77 Fed. Reg. 53,159 (Aug. 31, 2012).......................................................................6, 7, 24

## GLOSSARY

APA            Administrative Procedure Act

Association    Petitioner Association of Flight Attendants–CWA, AFL-CIO

Committee      Aviation Rulemaking Committee

FAA            Federal Aviation Administration

PED            Portable electronic device

No. 13-1316

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

ASSOCIATION OF FLIGHT ATTENDANTS—CWA, AFL-CIO,

Petitioner,

v.

MICHAEL P. HUERTA, ADMINISTRATOR
OF THE FEDERAL AVIATION ADMINISTRATION,

Respondent.

————————

ON PETITION FOR REVIEW FROM THE
FEDERAL AVIATION ADMINISTRATION

————————

**PROOF BRIEF FOR RESPONDENT**

————————

**STATEMENT OF JURISDICTION**

Petitioner invokes this Court's jurisdiction under 49 U.S.C. § 46110(a), which provides that "a person disclosing a substantial interest in an order issued by" the FAA "may apply for review" in this Court "not later than 60 days after the order is issued." Petitioner filed this petition for review on December 30, 2013, seeking this Court's review of FAA Notice N8900.240, which was issued on October 31, 2013. *See* Joint Appendix ("JA") __-__ [Certified Index to the Record ("CIR") #38]. For

the reasons set forth in Section I.A of the Argument below, however, the Court lacks jurisdiction over the petition because the Notice does not constitute final agency action. *See, e.g.*, *Vill. of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006) (noting that jurisdiction under 49 U.S.C. § 46110(a) is limited to review of "final order[s]").

## STATEMENT OF THE ISSUES

Petitioner seeks to challenge FAA Notice N8900.240, an internal guidance document issued to FAA aviation safety inspectors concerning the use and stowage of portable electronic devices aboard commercial and other aircraft.  The questions presented are:

**1.**  Whether the FAA's Notice constitutes a final order reviewable in this Court under 49 U.S.C. § 46110(a).

**2.**  Whether the Notice creates a "legislative rule" for which notice-and-comment rulemaking was required.

**3.**  Whether, assuming that the Notice were reviewable, the Notice's guidance on stowage of portable electronic devices survives arbitrary-and-capricious review.

## PERTINENT STATUTES AND REGULATIONS

Relevant authorities are reproduced in an addendum to this brief.

## STATEMENT OF THE CASE

### A.      Nature of the Case

Under longstanding FAA regulations, commercial aircraft operators are principally responsible for determining whether and when to authorize passenger use of portable electronic devices during flight.  *See* 14 C.F.R. § 121.306(b)(5), (c).  An operator may allow the use of portable electronic devices so long as it determines that such use would not cause interference with aircraft navigation or communication systems.  *Ibid.*  Operators are also principally responsible for preparing an FAA-approved "carry-on baggage program."  14 C.F.R. § 121.589(a).

In October 2013, the FAA issued a set of guidance documents describing a recommended assessment tool for operators to use in determining whether they can safely expand the use of passenger portable electronic devices during flight.  Petitioner, a union of flight attendants, challenges one of these guidance documents, an internal Notice that informs FAA aviation safety inspectors of the assessment tool and provides related advice concerning how changes to an operator's portable electronic device policies may be implemented, including through revisions to the operator's carry-on baggage program.  Petitioner argues that the Notice was unlawfully issued without notice-and-comment rulemaking and that the guidance contained in the Notice is arbitrary and capricious.

## B.    Statutory and Regulatory Background

The Federal Aviation Administration is responsible for "promot[ing] [the] safe flight of civil aircraft" in the United States.  49 U.S.C. § 44701(a).  To that end, Congress has vested the FAA with broad authority to issue "regulations and minimum standards" relating to "practices, methods, and procedure[s]" that the FAA Administrator "finds necessary for safety in air commerce."  *Id.* § 44701(a)(5); *see also* 49 U.S.C. § 106(f)(3)(A) (authorizing the FAA Administrator to "issue, rescind, and revise such regulations as are necessary to carry out th[e] functions [of the FAA]").

In the exercise of this authority, the FAA has promulgated rules governing the safety of commercial air operations.  *See* 14 C.F.R. §§ 121.1 *et seq.* ("Part 121"). Among other things, FAA's Part 121 regulations address the use by passengers of portable electronic devices ("PEDs") aboard civil aircraft.  *See* 14 C.F.R. § 121.306. By longstanding rule, operators may authorize the use of portable electronic devices during flight as long as the operator determines that the device "will not cause interference with the navigation or communication system of the aircraft."  14 C.F.R. § 121.306(b)(5); *see also id.* § 121.306(c).[1]  The regulation generally prohibits the use of

---

[1] The Part 121 regulation governing portable electronic devices dates to 1999. *See* 64 Fed. Reg. 1076, 1080 (Jan. 7, 1999) (promulgating 14 C.F.R. § 121.306).  Even before then, however, commercial aircraft operators were bound by a substantively identical Part 91 regulation, 14 C.F.R. § 91.21, which applies to all aircraft operators. *See* 64 Fed. Reg. at 1078; 31 Fed. Reg. 15,317, 15,318 (Dec. 7, 1966) (promulgating 14 C.F.R. § 91.19, later re-codified as 14 C.F.R. § 91.21); JA __ [CIR#35, at 12] (describing the regulatory history).

4

these devices absent such a determination. *Id.* § 121.306(a). Certain devices, such as hearing aids and pacemakers, may be used even if no operator determination is made. *Id.* § 121.306(b)(1)-(4).

To assist operators with their determinations about whether and when to allow the use of portable electronic devices, the FAA supports technical research concerning the causes and risks of electronic interference with aircraft navigation and communication (or "avionics") systems. *See* JA __-__ [CIR#5, at 6-7] (describing the history of "joint industry-government committees" that have "studied the risks associated with PED usage"). Based on these technical analyses, the FAA may also make recommendations to operators concerning their policies on passenger use of portable electronic devices. *See, e.g.,* JA __-__ [CIR#2] (Advisory Circular No. 91-21.1B, *Use of Portable Electronic Devices Aboard Aircraft* (Aug. 25, 2006)). In general, however, the decision whether to permit or forbid the use of such devices is within the operator's sole discretion. *See* 14 C.F.R. § 121.306(b)(5), (c); *see also, e.g.,* JA __-__ [CIR#5, at 1-2] (explaining that "no specific FAA approval is required" before an operator "authorize[s] the use of PEDs"); JA __, __ [CIR#35 at 11, 13] (same).

FAA regulations also address carry-on baggage. Since 1987, Part 121 regulations have required aircraft operators to formulate and obtain FAA approval of an official "carry-on baggage program." 14 C.F.R. § 121.589(a); *see* 52 Fed. Reg. 21,472, 21,476 (June 5, 1987) (promulgating rule). Among other things, these programs must specify the size and amount of baggage that each passenger may bring

into the aircraft cabin.  14 C.F.R. § 121.589(a).  The regulation also provides that

operators may not allow an airplane to take off or land unless "each article of baggage

is stowed" in a suitable closet or "stowage compartment," such as an overhead bin, or

"[u]nder a passenger seat."  *Id.* § 121.589(c).[2]  Through separate guidance, the FAA

has instructed operators to describe in their carry-on baggage program "what you

include in the term 'Carry-on Baggage.'"  *See* JA __ [CIR#1, at 2].

The FAA's aviation safety inspectors conduct regular reviews of commercial

aircraft operations and, where agency approval is required, are responsible for

ensuring that an operator's program changes comply with applicable regulations.  The

FAA provides guidance to its inspectors through the "Flight Standards Information

Management System," which incorporates both an "electronic handbook" containing

permanent policy instructions as well as "Notices" containing interim guidance.  *See*

FAA Order 8900.1, at 1-3 (Sept. 13, 2007) (attached in Addendum at pp. B-1 to B-5).

### C.    Factual Background

**1.**  Prior to 2013, few aircraft operators allowed portable electronic devices to

be used by passengers during takeoff and landing.  *See, e.g.*, JA __ [CIR#5, at 8] (77

Fed. Reg. 53,159, 53,161 (Aug. 31, 2012)) ("While FAA regulations allow aircraft

operators to demonstrate when and which PEDs can be safely used, few aircraft

---

[2] Carry-on baggage may also be secured as provided in a separate regulation
governing "cargo."  *See* 14 C.F.R. § 121.589(c)(2) (allowing stowage "[a]s provided in"
14 C.F.R. § 121.285(c)-(d)).

operators have allowed use of devices during critical phases of flight (e.g., takeoff and landing).").  Instead, most operators appear to have followed an FAA technical recommendation issued in 2006, in which operators were encouraged to permit use of portable electronic devices "only during non-critical phases of flight."  JA ___ [*Id.* at 7] (77 Fed. Reg. at 53,161) (citing Advisory Circular No. 91-21.1B).

In August 2012, the FAA published a notice in the Federal Register soliciting public comments "on current policy, guidance, and procedures that aircraft operators . . . use when determining if passenger use of portable electronic devices (PEDs) may be allowed during any phase of flight on their aircraft."  JA ___ [*Id.* at 1] (77 Fed. Reg. at 53,159-53,160).  The FAA notice also requested views on, among other things, whether portable electronic devices should be stowed during takeoff and landing "to prevent personal injury" in the event of an emergency.  JA ___ [*Id.* at 11] (77 Fed. Reg. at 53,162).  The agency explained that "[t]he desired outcome of this solicitation" was to "have sufficient information to allow operators to better assess whether more widespread use of PEDs during flight is appropriate," although "no specific FAA approval [was] required."  JA ___-___ [*Id.* at 1-2] (77 Fed. Reg. at 53,160).  The agency received 1,062 comments from individuals, industry groups, and others, including petitioner.  JA ___ [CIR#35, at 2]; *see, e.g.,* JA ___-___ [CIR#24] (petitioner's comment).[3]

---

[3] As of July 2014, all comments remain publicly available at http://www.regulations.gov (search for Docket ID "FAA-2012-0752").

In January 2013, the FAA established an advisory committee, known as the Aviation Rulemaking Committee ("Committee"), to review the submitted comments and to "make recommendations to the FAA Administrator . . . to further clarify and provide guidance on allowing additional PED[] [usage] without compromising the continued safe operation of the aircraft." JA __ [CIR#35, at 2]. Among the Committee's members were representatives from flight attendant groups (including petitioner), pilot associations, and passenger-advocacy organizations, as well as aircraft operators, aircraft and avionics manufacturers, and electronics manufacturers and distributors. JA __, __-__ [*Id.* at 1, 17-19]. The Committee also received input from two technical working groups: one which developed an "avionics system functional hazard risk assessment" tool, and another that considered the stowage of portable electronic devices. JA __-__ [*Id.* at 9-10].

In September 2013, the Committee issued a comprehensive report that made various recommendations to the FAA regarding the possible provision of further guidance to aircraft operators about passenger use of portable electronic devices. *See generally* JA __-__ [CIR#35]. The core of the Committee's report focused on technical recommendations aimed at helping aircraft operators assess the risk of avionics interference during various phases of flight. In particular, the report proposed and described an assessment tool through which operators could determine whether expanding the use of certain portable electronic devices would interfere with aircraft avionics systems. *See* JA __-__, __-__ [*Id.* at 25-26, F-1 to F-48].

8

The report also addressed several other matters, including a recommendation that the FAA "support standardized industry best practices for stowage related to PEDs" by providing "update[d] stowage policy and guidance documents." JA __ [*Id.* at 34]. To that end, the Committee report appended a separate report from its stowage working group containing "information for consideration when assessing the impact expanded PED use has on an operator's current stowage policies." JA __ [*Id.* at 34]; *see* JA __-__ [*Id.* at G-1 to G-36] (working group report and addenda).

After considering the Committee's report, the FAA implemented several of its recommendations in guidance documents that provided updated advice regarding passenger use of portable electronic devices. In a guidance memorandum to aircraft operators (known as an "Information for Operators" or "InFO") issued on October 31, 2013, the FAA explained that "based on the information provided within the [Committee]," the agency was of the view that "sufficient risk mitigation can occur to allow for safe operation of PEDs during critical phases of flight." JA __ [CIR#36, at 1] (InFO 13010, *Expanding Use of Passenger Portable Electronic Devices* (*PED*) (Oct. 31, 2013)). Adopting the Commission's suggested method for evaluating avionics interference, the Information for Operators memorandum identified a recommended assessment tool "for operators to use when determining if expanded PED use is appropriate." JA __ [*Id.* at 2].[4] The memorandum reaffirmed, however, that each

---

[4] The assessment tool itself is described in detail in an accompanying technical

*Continued on next page.*

operator is "solely responsible for determining which PEDs may be used on its

aircraft," JA __ [*Id.* at 2], and that "allow[ing] for expanded passenger use of PEDs in

flight" was a matter within each operator's discretion.  JA __ [*Id.* at 1].

At the same time, the FAA also issued interim guidance to its own aviation

safety inspectors in the form of a Notice.  *See* JA __-__ [CIR#38] (Notice N8900.240,

*Expanded Use of Passenger Portable Electronic Devices* (*PED*) (Oct. 31, 2013)) ("Notice").

The Notice—the sole document challenged by petitioner in this action—explained to

inspectors that, based on the Committee's recommendations, the FAA believed that

airlines could responsibly "expand[] [the] use of passenger-supplied portable

electronic devices (PEDs) throughout various phases of flight."  JA __ [*Id.* at 1].  The

Notice reiterated that "the aircraft operator is solely responsible for determining

which PEDs may be used on its aircraft" and that "[t]he FAA does not approve an

operator's finding of non-interference."  JA __-__ [*Id.* at 1-2].

The agency's October 2013 guidance also offered advice about the stowage of

portable electronic devices.  Both the Notice and the Information for Operators

indicated that operators who elect to permit expanded use of portable electronic

devices may need to update their approved carry-on baggage program to reflect these

changes.  *See* JA __ [CIR#38, at 3] (Notice) ("An operator may need to revise its

---

supplement, known as an "Aid to Operators."  *See* JA __-__ [CIR#37] (InFO
13010SUP, *FAA Aid to Operators for the Expanded Use of Passenger PEDs* (Oct. 31,
2013)).  The Aid to Operators has since been updated several times, most recently on
June 9, 2014.  The current version is provided in the Addendum at pp. B-6 to B-21.

approved carry-on baggage program to allow expanded use of passenger PEDs.");
*accord* JA \_\_ [CIR#36, at 3] (Information for Operators).

With respect to such revisions, the Notice also articulated several "general concerns" that "[a]n expanded operator's program should address." JA \_\_ [CIR#38, at 3]. For example, the Notice advised inspectors that an operator's carry-on baggage program "should define 'small PEDs' and describe how these items may safely remain powered on, as long as they are secure (not loose) during takeoff and landing." JA \_\_ [CIR#38, at 3] (Notice); *see also* JA \_\_ [CIR#37, at 6] (Aid to Operators) (providing same guidance to operators). The Notice also stated that an operator's carry-on baggage program should provide that "[l]arge" devices, such as "full-size laptops," "must be safely stowed" during takeoff and landing "so as not to present a hazard in the event of severe turbulence, crash forces, or emergency egress." JA \_\_ [CIR#38, at 3]; *accord* JA \_\_ [CIR#37, at 6] (Aid to Operators) ("Larger PED articles (such as full-size laptops) should be safely stowed" during "take-off, landing and other critical phases of flight as appropriate").

Finally, the October 2013 guidance documents also encouraged operators and inspectors to refer to additional considerations set forth in the Committee's stowage working group report. *See* JA \_\_ [CIR#36, at 3] (Information for Operators) (noting that report "provides considerations for an operator to use when revising their approved carry-on baggage program to allow for expanded PED use"); JA \_\_ [CIR#38, at 3] (Notice) (similar). These issues for consideration include, among other

11

things, "the effect of PED use on passenger attention to crewmember instructions"; "options for designating seat pockets as approved stowage locations"; the "safe use and stowage of corded devices (e.g., headphones, power adapters)"; and "formats and media options for disseminating information to travelers" about operators' stowage policies.  JA __ [CIR#36, at G-19]; *see generally* JA __-__ [*id.* at G-19 to G-23].

**2.**  Petitioner, the Association of Flight Attendants–CWA, AFL-CIO (the "Association" or "petitioner"), is a labor union whose members include flight attendants who work for airlines regulated by the FAA.  *See* Pet'r Br. 6.  The Association participated in several respects in the process leading up to the FAA's October 2013 guidance.  In response to the August 2012 Federal Register notice, the Association submitted a comment letter to the FAA addressing, among other things, the stowage of portable electronic devices.  *See* JA __-__ [CIR#24].  In addition, a representative of the Association served as a member of the Committee and also participated in the Committee's stowage working group, and thereby assisted in preparing the recommendations that the Committee presented to the FAA.  *See* JA __, __, __ [CIR#35, at 18, A-1, G-5].

After issuance of the Notice, in December 2013, the Association filed this petition for review.  Petitioner principally argues that the Notice "effectively dismantled" the agency's carry-on baggage regulation, 14 C.F.R. § 121.589, and therefore should have proceeded through notice-and-comment rulemaking.  *See* Pet'r

Br. 9.  The Association does not seek to invalidate the other guidance documents issued on October 31, 2013.

## SUMMARY OF ARGUMENT

Under longstanding FAA regulations, aircraft operators are generally responsible for determining whether and when passengers may use portable electronic devices during flight, *see* 14 C.F.R. § 121.306(b)(5), (c), and for formulating an FAA-approved program governing the stowage of carry-on baggage, *see* 14 C.F.R. § 121.589.  In October 2013, the FAA issued a set of guidance documents that proposed an assessment tool that operators, at their election, could follow in determining whether expanded use of portable electronic devices would pose an unacceptable risk of avionics interference.  Several of these documents, including an internal Notice to FAA aviation safety inspectors (the sole document challenged here), also offer several considerations regarding the stowage of portable electronic devices for operators and inspectors to consult when making or reviewing any corresponding revisions to operators' carry-on baggage programs.

The Association may not obtain review of the Notice.  The Notice does not "determine 'rights or obligations' or give rise to 'legal consequences,'" *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007), and therefore does not constitute a final agency order within the meaning of 49 U.S.C. § 46110(a).  Similarly, the Notice does not constitute a "legislative rule" for which the APA requires notice-and-comment rulemaking.  *Catawba County v. EPA*, 571 F.3d 20, 33-34 (D.C. Cir.

2009) (per curiam).  In any event, petitioner was afforded ample opportunity to participate in the agency's guidance process, and thus can identify no prejudice from the manner in which the agency proceeded.  Finally, contrary to petitioner's mistaken assertions, the guidance contained in the Notice is entirely reasonable and adequately supported by the record.

## ARGUMENT

## I.    BECAUSE IT DOES NOT DETERMINE ANY LEGAL RIGHTS OR OBLIGATIONS, THE NOTICE IS NOT REVIEWABLE AND A RULEMAKING PROCESS WAS NOT REQUIRED.

### A.    The Notice Does Not Constitute A Final Agency Order Reviewable Under 49 U.S.C. § 46110.

Petitioner seeks to challenge the Notice under 49 U.S.C. § 46110(a), which permits direct review in this Court of "order[s]" issued by the FAA Administrator.

"A reviewable order under 49 U.S.C. § 46110(a) 'must possess the quintessential feature of agency decisionmaking suitable for judicial review: finality.'" *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007) (quoting *Vill. of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006)).  "To be deemed 'final,' an order must mark the 'consummation' of the agency's decisionmaking process, and must determine 'rights or obligations' or give rise to 'legal consequences.'"  *Ibid.*; *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  An agency action is "non-final" if it "does not impose an obligation, deny a right, or otherwise fix some legal

relationship." *Vill. of Bensenville*, 457 F.3d at 69.  Finality is a prerequisite to jurisdiction under the statute.  *See, e.g.*, *id.* at 68-69.

The Notice is not final agency action.  It does not determine or alter the existing legal obligations of any person or entity.  FAA regulations have long permitted airline operators to decide for themselves whether (and, if so, when) to allow passengers to use portable electronic devices.  *See* 14 C.F.R. § 121.306(b)(5), (c) (empowering an operator to allow the use of any device that it "has determined will not cause interference with the navigation or communication system of the aircraft").  Preexisting FAA guidance also explained that "the responsibility for permitting passenger use" of these devices "lies solely with the operator."  JA __ [CIR#2, at 2] (Advisory Circular No. 91-21.1B).  The Notice does not alter that instruction, but instead reaffirms that "the aircraft operator is solely responsible for determining which PEDs may be used on its aircraft" and "during which phase(s) of flight."  JA __-__ [CIR#38, at 1-2].  The Notice does no more than provide guidance to aviation safety inspectors—concurrently with guidance to the operators themselves, *see* JA __-__, __-__ [CIR#36, 37]—about how operators might exercise the discretion that the FAA's regulations already afforded them.

Similarly, with respect to the stowage of carry-on baggage, the Notice does not "determine 'rights or obligations'" or "give rise to 'legal consequences.'"  *City of Dania Beach, Fla.*, 485 F.3d at 1187.  The Notice does not alter operators' existing duties to develop a "carry-on baggage program," 14 C.F.R. § 121.589(a), or to ensure that

15

baggage is stowed in accordance with that program before an aircraft takes off or lands, 14 C.F.R. § 121.589(c). The Notice merely advises that operators "may need to revise [their] approved carry-on baggage program[s] to allow expanded use of passenger PEDs," JA __ [CIR#38, at 3]—a step that would be necessary if, for example, the operator's program had mandated that such devices remain stowed.

Consistent with the other October 2013 guidance documents (which petitioner does not challenge), the Notice also advises inspectors that "[a]n expanded operator's program should address" certain other "general concerns," including that "[l]arge" portable electronic devices "must be safely stowed" during takeoff and landing, while "small" devices may be "secured" through other means, such as "in-hand, in a belt or arm holster[,] or in a pant pocket." JA __ [CIR#38, at 3]; *see also* JA __ [CIR#37, at 6] (containing same advice). But the Notice's articulation of these considerations does not, in itself, effect a "certain change in the legal obligations" of operators. *Ctr. for Auto Safety v. Nat'l Hwy. Traffic Safety Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006) (internal quotation marks omitted). Indeed, an operator need not change its existing stowage policies at all.

The FAA's October 2013 guidance resembles in several respects the guidance held unreviewable in *Center for Auto Safety*. There, the agency issued a set of "policy guidelines" advising auto manufacturers of its views concerning the circumstances in which so-called "regional recalls" would be appropriate, in the context of a statutory scheme that facilitated voluntary recalls of defective motor vehicles. *See* 452 F.3d at

16

802-04. Recognizing that these guidelines did not "establish new rights and obligations for automakers," but merely articulated the agency's legal view as to how automakers should exercise their discretion under the statute, this Court held that the guidelines did not constitute final agency action reviewable under the APA. *Id.* at 810; *see generally id.* at 807-11; *id.* at 811-13 (Randolph, J., concurring) (agreeing that guidelines were unreviewable because "they do not impose any 'legal consequences' on the regulated automakers"). The FAA's Notice likewise merely advises inspectors, and by extension operators, of certain "general concerns" that the agency considers relevant to operators' revisions of their carry-on baggage programs. JA __ [CIR#38, at 3]. *See also, e.g., Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 16 (D.C. Cir. 2005) (holding agency action unreviewable where the "scope" of the legal constraint on regulated parties "remain[ed] exactly as it was before").

Nor does the Notice alter the legal obligations of the agency itself. Both before and after promulgation of the Notice, FAA inspectors remain responsible for reviewing and approving operators' revisions to their carry-on baggage programs. *See* 14 C.F.R. § 121.589(a) (requiring that such programs be "approved"). In order to assist inspectors in performing that task, the Notice provides general guidance about stowage matters. *See* JA __ [CIR#38, at 3] (advising that "[a]n expanded operator's program *should address* the following *general concerns*") (emphasis added). But the Notice does not expressly dictate any course of action that inspectors must follow. *Cf., e.g., Wilderness Soc'y v. Norton*, 434 F.3d 584, 594-97 (D.C. Cir. 2006) (holding that agency

17

manual, which provided "a set of internal guidelines" that were "intended to guide and inform Park Service managers and staff," did not "create enforceable regulations or modify existing legal rights").

In sum, the Notice does not constitute final agency action reviewable under 49 U.S.C. § 46110(a). *Cf. Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 393 (D.C. Cir. 2013) (reaffirming that "controversies over . . . interpretative rules, statements, guidelines, and policy statements typically cannot result in justiciable disputes"). The petition therefore should be dismissed.

## B.   The Notice Is Not Subject To APA Notice-and-Comment Requirements.

For substantially the same reasons already discussed, the Notice also does not constitute a "legislative rule" for which notice-and-comment rulemaking is required.

**1.**  Under the APA, before an agency may promulgate a "rule," it must comply with certain procedural requirements set forth in the statute.  5 U.S.C. § 553(b)-(d). At the same time, the APA expressly exempts "general statements of policy" and "interpretative rules" from the requirement of notice-and-comment rulemaking. *Id.* § 553(b)(A), (d)(2).

"[W]hether an agency action is the type of action that must undergo notice and comment depends on 'whether the agency action binds private parties or the agency itself with the 'force of law.'" *Catawba County v. EPA*, 571 F.3d 20, 33 (D.C. Cir. 2009) (per curiam) (quoting *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002)).

18

Central to this analysis is "the [a]gency's own characterization of the action," as reflected in "[t]he language used by [the] agency" in the challenged statement. *Ctr. for Auto Safety*, 452 F.3d at 806 (internal quotation marks omitted). Additionally, the Court may consider other factors, including (1) whether absent the rule "there would not be an adequate legislative basis for enforcement action" by the agency; (2) whether the agency published the rule in the Code of Federal Regulations; (3) whether the agency has explicitly invoked its legislative authority; and (4) "whether the rule effectively amends a prior legislative rule." *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993). As this Court has recognized, this inquiry resembles in significant respects the inquiry into whether an agency action is final for purposes of judicial review. *See, e.g.*, *Natural Res. Def. Council v. EPA*, 643 F.3d 311, 321 (D.C. Cir. 2011) (citing *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 216, 226 (D.C. Cir. 2007)); *Ctr. for Auto Safety*, 452 F.3d at 806.

        As previously explained, the Notice does not alter any legal rights or obligations, and instead reaffirms that operators are ultimately responsible for determining whether to permit expanded usage of portable electronic devices and, if necessary, to make any implementing changes to their carry-on baggage programs. *See* JA __ [CIR#38, at 3]. Similarly, as explained, the Notice does not purport to bind the agency itself, but instead provides only general guidance to FAA inspectors.

        The language used by the agency is entirely consistent with this understanding. The Notice states that it is intended to "provide[] guidance," not to establish binding

norms.  JA ___ [CIR#38, at 1]; *accord* JA ___ [CIR#36, at 1] (Information for Operators) (similarly describing itself as "guidance" that "carriers may use").  The Notice references the "recommendations" made by the Committee to the FAA about "allowing additional passenger PED usage," but repeatedly emphasizes that the operator "is solely responsible for determining which PEDs may be used on its aircraft."  JA ___ [CIR#38, at 1-2].  Likewise, with respect to stowage matters, the Notice advises inspectors that "[a]n expanded operator's program should address" certain "general concerns," but does not mandate that inspectors or the agency itself undertake, or refrain from undertaking, any particular course of action.  JA ___ [CIR#38, at 3].  The Notice thus "read[s] as *guidelines*, not binding regulations."  *Ctr. for Auto Safety*, 452 F.3d at 809.[5]  *Cf. Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2003) (agency action constituted a legislative rule where it "read[] like a ukase" that "command[ed]" and "dictate[d]" particular action).

Other doctrinal considerations yield the same result.  The Notice does not purport to supply a basis for novel enforcement action against regulated parties.  *Cf. Am. Mining Cong.*, 995 F.2d at 1112 (inquiring into whether a "legislative gap" existed

---

[5] Indeed, even language considerably more directory in tone would not be enough to turn the Notice into a binding norm with legal effect.  *See, e.g.*, *Wilderness Soc'y*, 434 F.3d at 595-96 (agency's management policy manual contained only "nonbinding" "guidelines" even where it "on occasion use[d] mandatory language"); *Nat'l Ass'n of Home Builders*, 415 F.3d at 14 (agency survey protocols did not constitute final agency action "[d]espite some mandatory language in the Protocols regarding how the survey should be conducted"); *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 666-67 (D.C. Cir. 1978).

that required the challenged agency statement "as a predicate to enforcement"). The FAA did not publish the Notice in the Code of Federal Regulations, nor did it invoke any of its statutory rulemaking authorities. *Cf. ibid.* And, as explained above, the Notice in no way amends or vitiates the agency's existing regulations. Under any line of analysis, then, a rulemaking was not required.

**2.** Petitioner does not appear to dispute that operators continue to retain the discretion under the portable electronic device regulation, 14 C.F.R. § 121.306(b)(5), to determine whether and when to permit the use of such devices during flight. Instead, petitioner incorrectly asserts that the Notice "has effectively dismantled 14 C.F.R. § 121.589," a separate regulation governing carry-on baggage, by "permit[ting] PEDs to not be properly stowed upon takeoff and landing." Pet. Br. 9.

As explained, however, the carry-on baggage regulation requires airlines to formulate a "carry-on baggage program," 14 C.F.R. § 121.589(a); to obtain FAA approval of that program, *ibid.*; and to ensure that an aircraft does not depart unless "each article of baggage" is "stowed" in an approved location, *id.* § 121.589(c). The Notice in no way "dismantle[s]" or changes these requirements. Instead, the Notice principally advises that operators who choose to "allow expanded use" of portable electronic devices "may need to revise" their approved carry-on baggage programs. JA __ [CIR#38, at 3]. The Notice also does not legally mandate that operators adopt any particular rules for stowage of portable electronic devices, but instead (as

21

petitioner acknowledges) "*simply suggests* that 'smaller' items be held, while 'larger' items be stowed in an unspecified location." Pet'r Br. 9 (emphasis added).

Petitioner mistakenly urges that the Notice nonetheless violates the carry-on regulation because the Notice suggests that operators might allow passengers to secure "small PEDs" by various means (including in a pocket, on a belt, or in hand) other than solely under the seat or in an overhead compartment. But contrary to petitioner's supposition, not every single item carried onto a plane (*e.g.*, a cell phone, a book, a pack of gum) necessarily constitutes an "article of baggage" that must be "stowed" under the seat or in an overhead compartment. 14 C.F.R. § 121.589(c). Rather, under the FAA's longstanding practice, operators themselves bear the principal responsibility for determining whether and how small personal items may be stowed or otherwise secured. *See, e.g.*, JA __ [CIR#35, at 22] (noting lack of standardized agency guidance in this respect); JA __ [CIR#36, at 4] (Information for Operators) (recommending that operators address "[h]ow and when PEDs must be secured or stowed").

Far from "fundamentally alter[ing]" or "conflict[ing] with [the] written direction and precedent that the FAA had previously provided," Pet'r Br. 1, 10, the Notice is entirely consistent with the agency's prior advice. For example, in a 2009 memorandum, the FAA advised operators of its view that it would be permissible for small personal items, "such as eyeglasses or a cell phone," to be stored in seat-back pockets, provided that such storage would not obstruct passengers' egress in an

22

emergency or exceed the pockets' approved weight limitations.[6]  JA __ [CIR#3, at 1] (InFO 09018, *Stowage of Items in Seat Pockets* (Nov. 12, 2009)).  Indeed, the agency's current advice on stowage matters continues to cite the agency's prior regulations and guidance.  *See* JA __ [CIR#36, at 3] (citing 14 C.F.R. § 121.589); Addendum at p. B-19 (updated Aid to Operators) (referring operators to InFO 09018); *see also* JA __-__ [CIR#35, at G-10 to G-11] (Committee working group report referring operators to a 2000 advisory circular (included at JA __-__) [CIR#1]).  Thus, contrary to the implications of petitioner's argument, the Notice does not mark a "significant revision" to a "definitive interpretation[]" of the carry-on baggage regulation.  *Cf. Mortg. Bankers Ass'n v. Harris*, 720 F.3d 966, 969 (D.C. Cir. 2013), *cert. granted*, 2014 WL 833886 (U.S. June 16, 2014) (No. 13-1041).

Petitioner similarly misses the mark in urging that the Notice constitutes a legislative rule requiring prior notice-and-comment rulemaking on the theory that "allowing passengers free rein to hold their PEDs during critical phases of flight" would constitute a safety hazard.  Pet'r Br. 11.  That petitioner can hypothesize safety rationales for adopting a more restrictive regulatory approach does not demonstrate

---

[6] Petitioner mistakenly assumes that the agency intended this guidance to mandate that eyeglasses or cell phones be "stowed" in an overhead bin or under the seat during takeoff and landing.  *See* Pet'r Br. 10.  As the Committee's stowage working group observed, prior to October 2013, the majority of airlines with FAA-approved carry-on baggage programs allowed passengers to stow small portable electronic devices in seat-back pockets.  JA __, __ [CIR#35, at G-17, G-18] (reflecting that 25 of 40 survey respondents indicated that operator allowed at least some devices to be stowed in seat pockets).

that the Notice "create[s] or modif[ies] legally binding rights or obligations" so as to require notice and comment. *Catawba County*, 571 F.3d at 33.

**3.** In any event, any putative procedural error here would be harmless. *See* 5 U.S.C. § 706 (requiring courts to take "due account" of "the rule of prejudicial error"). As explained, prior to issuing the Notice and other guidance in October 2013, the FAA published a Federal Register notice soliciting public views on "current policy, guidance, and procedures" relating to the use of portable electronic devices during flight, JA __ [CIR#5, at 1] (77 Fed. Reg. at 53,159-53,160), and specifically requesting comments about proposals for agency guidance on the stowage of portable electronic devices, JA __ [*id.* at 10] (*id.* at 53,162). The Association itself responded to that inquiry, along with a large number of other commenters. *See* JA __-__ [CIR#24] (petitioner's letter); JA __ [CIR#35, at 2] (identifying "1,062 discrete comments"). Additionally, petitioner itself participated in reviewing these comments through the service of its representative on the Committee and the Committee's stowage working group. That process generated a comprehensive Committee report, *see* JA __-__ [CIR#35], which in turn served as the basis for public guidance issued by the agency in October 2013.

Notwithstanding its obligation to "demonstrate that the agency's violation of the APA's notice and comment procedures has resulted in 'prejudice,'" *Am. Coke & Coal Chems. Inst. v. EPA*, 452 F.3d 930, 939 (D.C. Cir. 2006), the Association makes no effort to explain how it was harmed by the manner in which the agency chose to

24

proceed. Under these circumstances, any technical failure to engage in notice-and-comment rulemaking was harmless. *See, e.g., U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 40 (D.C. Cir. 2005) (holding harmless an agency's failure to engage in notice-and-comment rulemaking where the agency "published notice in the Federal Register"; "received and considered comments on [its] proposal from, among others, the petitioners"; and adopted the proposal in a published order).

## II.    THE FAA'S GUIDANCE IS ENTIRELY REASONABLE.

As explained above, the Notice is not a final order and is therefore not reviewable under 49 U.S.C. § 46110(a). Even if it were, however, the Notice would readily survive this Court's review.

A court may only set aside an FAA action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law." *City of Santa Monica v. FAA*, 631 F.3d 550, 554 (D.C. Cir. 2011) (internal quotation marks omitted). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Helicopter Ass'n Int'l, Inc. v. FAA*, 722 F.3d 430, 435 (D.C. Cir. 2013) (emphasizing that such review is "highly deferential").

Petitioner's challenge to the substance of the Notice's guidance is without merit. As explained, the Notice is principally intended to advise FAA inspectors of a recommended method for operators to employ in determining whether the use of

portable electronic devices during flight would pose an unacceptable risk of avionics interference.  The Notice also advises inspectors of stowage-related considerations that the agency has encouraged operators to consider in making any necessary or desired updates to the operators' respective carry-on baggage programs.  The Notice and accompanying guidance suggest that large portable electronic devices "must be safely stowed" during takeoff and landing, while smaller devices may be "secured" through other means, including by being held in a passenger's hand.  JA __ [CIR#38, at 3]; *accord, e.g.*, JA __ [CIR#37, at 6] (Aid to Operators).  Allowing small devices to be secured in this manner is fully consistent with the Committee's conclusion that most operators could safely expand the use of portable electronic devices during takeoff and landing, *see* JA __ [CIR#35, at 32], and with the findings of FAA research scientists, *see* JA __ [CIR#35, at G-20] (citing JA __-__ [CIR#35, at G-31 to G-35]).

   In challenging the Notice, the Association incorrectly asserts that the FAA "has not promulgated a satisfactory safety explanation for expanding the use of PEDs during takeoff and landing with the present data available."  Pet'r Br. 13.  In particular, petitioner emphasizes the risk that a small portable electronic device might cause injury in the event of sudden acceleration, deceleration, or turbulence.[7]

---

[7] Petitioner also appears to assert that the Notice is arbitrary and capricious on the theory that it is "in violation of an existing, valid regulation," Pet'r Br. 5, but as previously explained, the Notice is fully consistent with 14 C.F.R. § 121.589.

Those criticisms are meritless. As explained, the FAA's October 2013 guidance is based in large measure upon the recommendations and considerations set forth by the Committee. With respect to projectile risk, the Committee's stowage working group specifically concluded that there was a "lack of evidence for any increased occupant injury risk posed by PEDs when compared to 'any other object (e.g., a hard cover book) of similar weight, size and stiffness.'" JA __ [CIR#35, at G-20] (quoting JA __ [CIR#35, at G-34]). That finding was significant partly because hardcover books generally need not be stowed during takeoff and landing under FAA regulations or airline practice. *Cf., e.g.*, JA __ [*Id.* at 16]. The working group also found that "few operators have reports of passengers being struck by PEDs during inflight incidents," observing that only one 1 of 27 operators surveyed had ever received a report of a device being dislodged and thrown due to turbulence or other sudden event. JA __-__ [*Id.* at G-17 to G-18].

Nor has the FAA "ignored" the "safety concerns" identified by the Association. *Cf.* Pet'r Br. 14. As explained, the FAA has in fact expressly encouraged operators, in formulating their portable electronic device policies, to take into account the safety considerations articulated in the stowage working group report. *See* JA __, __ [CIR#36, at 3; CIR #38, at 3] (referring to report); JA __ [CIR#35, at G-19] (working group report) (identifying "[k]ey [i]ssues" for operators to consider). Petitioner similarly overlooks the agency's advice that operators formulate passenger instructions that "encourage the stowage of all loose items during . . . take-off or

27

landing." JA ___ [CIR#36, at 3] (Information for Operators).  And of course, precisely because of safety concerns, the FAA has specifically recommended that larger devices (as determined by size or weight) should remain stowed during critical phases of flight, *see* JA ___, ___ [CIR#37, at 6; #38, at 3] (Aid to Operators; Notice), as should any other devices that "do not meet an operator's acceptance criteria for use during takeoff and landing," JA ___ [CIR#36, at 3] (Information for Operators).  As petitioner itself acknowledges, *see* Pet'r Br. 11, the agency has further elaborated upon this advice through subsequent updates to its technical guidance—guidance which petitioner does not challenge.  *See* Addendum at p. B-19 (updated Aid to Operators) (elaborating upon the distinction between larger and smaller devices, and identifying acceptable and preferred methods for "secur[ing]" smaller devices).  Petitioner has thus identified no basis for concluding that the Notice is arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the petition for review should be dismissed, or in the alternative, denied.

Respectfully submitted,[*]

STUART F. DELERY
  *Assistant Attorney General*

RONALD C. MACHEN JR.
  *United States Attorney*

MARK B. STERN
  (202) 514-5089

  /s/ Jeffrey E. Sandberg
JEFFREY E. SANDBERG
  (202) 532-4453
    *Attorneys, Appellate Staff*
  Civil Division, Room 7214
  U.S. Department of Justice
  950 Pennsylvania Avenue, N.W.
  Washington, DC  20530

JULY 2014

---

[*] The Department of Justice acknowledges the assistance of Sundeep Iyer, a second-year law student, in the preparation of this brief.

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,787 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.


  /s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
Counsel for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2014, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I further certify that I will cause 5 paper copies to be filed with the Court within two business days.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

 /s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
Counsel for Respondent